IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CATHERINE F. LANGELLA,            )
                                  )
        Plaintiff                 )
                                  )
    v.                            )        Case No. 09-cv-311E
                                  )
THE COUNTY OF MCKEAN,             )
MCKEAN COUNTY PRISON              )
BOARD, and TIMOTHY WOODRUFF,      )
former Warden of McKean County    )
Prison,                           )
                                  )
        Defendants                )
                                  )

## OPINION

Pending before this Court is Defendants' "Motion to Dismiss Pursuant to Federal Rule of

Civil Procedure" [Doc. #13]. Through this motion, Defendants seek to dismiss *pro se* Plaintiff

Catherine Langella's Amended Complaint. In her Amended Complaint, Plaintiff alleges a claim

pursuant to 42 U.S.C. § 1983 ("Section 1983") on the grounds that the Defendants engaged in

numerous acts while she was a pretrial detainee at the McKean County Prison that violated her

rights under the Fourteenth Amendment to the United States Constitution. For the reasons set

forth below, Defendants' Motion to Dismiss is granted in part and denied in part.

**I.      Standards of Review.**

As explained by the Third Circuit Court in Fowler v. UPMC Shadyside, 578 F.3d 203 (3d

Cir. 2009):

> when presented with a motion to dismiss for failure to state a claim, district courts
> should conduct a two-part analysis. First, the factual and legal elements of a claim
> should be separated. The District Court must accept all of the complaint's
> well-pleaded facts as true, but may disregard any legal conclusions. Id. Second, a

District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " Iqbal, 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211. See also Iqbal, 129 S.Ct. at 1949 (quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965-66 (2007) ("a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); Twombly, 127 S.Ct. at 1965 (factual allegations of a complaint "must be enough to raise a right to relief above the speculative level."). "This [standard] 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 127 S.Ct. at 1965). Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S.Ct. at 1965 (citations omitted).

In examining a *pro se* complaint that has been challenged by a motion to dismiss, the complaint is to be liberally construed. Alston v. Parker, 363 F.3d 229, 234 (3d Cir. 2004) (citing Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003)). Indeed, the Supreme Court has held

2

that, after Twombly, the Court is required to hold a *pro se* complaint, "to less stringent standards than formal pleadings drafted by lawyers," however inartfully pled. Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citing Estelle v. Gamble, 97 S.Ct. 285 (1975)). See also Holley v. Dept. of Veterans Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999) (holding that the court must read a *pro se* complaint for substance and apply the applicable law, regardless of whether the plaintiff used the appropriate names for his or her claims).

Finally, if court decides to grant a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6), the court must next decide whether leave to amend the complaint must be granted. As explained in Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008): "[w]e have instructed that if a complaint is vulnerable to 12(b)96) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." Id. at 116 (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir.2002)).

## II.    Factual Allegations.

Plaintiff's Amended Complaint[1] alleges as follows: Plaintiff is a resident of Bradford, Pennsylvania. Amended Complaint, ¶ 3. Defendant County of McKean ("the County") is a commission form of local government that has vested executive and legislative authority in an elected three-member Board of Commissioners. Id. at ¶ 4. Defendant McKean County Prison Board ("the Prison Board") oversaw the daily operations of the McKean County Prison ("the

---

[1]While Plaintiff discusses the facts she has alleged in her original Complaint in her Response to Defendants' Motion to Dismiss, she needs to understand that upon the filing of her Amended Complaint, the allegations contained in her original Complaint ceased to be a part of Plaintiff's lawsuit against the Defendants.

Prison"), including appointing and installing a warden of the Prison; Plaintiff believes the Board to no longer be operational. Id. at ¶ 5. Defendant Timothy Woodruff ("Warden Woodruff") was the Warden of the Prison when Plaintiff was a pretrial detainee there; he was installed by the Prison Board. Id. at ¶ 6. All of the Defendants jointly and severally oversaw the Prison during the time period relevant to Plaintiff's lawsuit. Id. at ¶ 8.

The Plaintiff's husband, then employed by the County as its Chief Public Defender, filed a complaint against Plaintiff alleging that she had assaulted him. Id. at ¶ 7. As a result of this complaint, the Plaintiff was an inmate at the Prison as a pretrial detainee from November 2, 2007 until December 12, 2007. Id.

While the Plaintiff was a pretrial detainee at the Prison, she was subjected to a strip search. Id. at ¶ 10. Additionally, she was subjected to numerous periods of "lock down" where all inmates were confined to their cells for a period of time without the ability to leave their cells for any reason. Id. at ¶ 11. The cells Plaintiff was locked down in always held three prisoners. Id. at ¶ 12. Plaintiff was told that the reason for the lock down was because an inmate, never the Plaintiff, was acting up. Id. at ¶ 11-12. During one of these lock downs, Plaintiff was confined to her cell for 48 hours. Id.

For many years prior to, and during, her time in the Prison, Plaintiff suffered from Restless Leg Syndrome ("RLS"), which led to Plaintiff suffering excruciating pain when lying down. Id. at ¶ 13. Plaintiff's only relief from episodes of RLS was walking for substantial periods of time. Id. Plaintiff was unable to relieve her symptoms while in lock down at the Prison, either for the night or when there was lock down for punishment, because every cell she was assigned to held three inmates, one of whom slept on the floor, and therefore, Plaintiff could

4

not walk off her pain. Id. at ¶ 14.

During her incarceration at the Prison, including when she was transported to the McKean County Courthouse to attend a hearing on Plaintiff's Petition for Final Protection from Abuse Order against her husband ("the Petition"), Plaintiff was transported to and from the Prison in both handcuffs and leg shackles. Id. at ¶ 15. She also had to wear "prison orange," and socks and rubber sandals. Id. at ¶ 16. When she was transported to the Courthouse for the hearing on her Petition, there were several inches of snow on the ground and when Plaintiff arrived at the Courthouse her feet were soaked and nearly frozen. Id. Upon arrival, Plaintiff was placed in a holding cell for nearly an hour without a coat or blanket to help her get warm and dry. Id. Plaintiff then was led into the courtroom, which was filled with her husband's co-workers, colleagues, and friends, all of whom were dressed in business attire. Id. at ¶ 17. Plaintiff's hair was grown out, gray and disheveled as a result of her incarceration. Id. Plaintiff did not have legal representation at the hearing because the Victim's Resource Center was unable to find a lawyer for her due to all attorneys being contacted to represent her having "conflicts of interest" due to their relationships with her husband. Id. When Plaintiff attempted to speak to onlookers in the courtroom about what was happening to her, she was told by courthouse security that if she did not "straighten up" she would be sent back to her cell without having her hearing. Id. All of this resulted in severe humiliation for Plaintiff. Id. at ¶ 18.

Throughout her incarceration at the Prison, Plaintiff was housed in a cell block designed to accommodate a maximum of seven inmates. Id. at ¶ 19. There was, however, a minimum of twelve and a maximum of twenty-one inmates housed in the cell block during her time at the prison. Id.

5

Plaintiff was not segregated as a pre-trial detainee from convicted inmates, many of whom were drug dealers or who were serving time for drug related offenses. Id. at ¶ 20.

While incarcerated Plaintiff was subjected to threats, coercion, physical assault, intimidation, and was repeatedly accused of being an informant. Id. at ¶ 21. Plaintiff reported these instances to prison staff who showed intentional indifference to Plaintiff's safety. Id. at ¶ 22. Plaintiff suffered constant mental and emotional anguish during her incarceration as a result of her fear for her personal safety. Id. at ¶ 23.

During Plaintiff's incarceration, a female corrections officer with an acute respiratory infection came into work despite her illness and infected nearly the entire population of prisoners, including the Plaintiff who became extremely ill. Id. at ¶ 24. There were no windows or fresh air in the cell block and Plaintiff was repeatedly denied her requests to see a doctor. Id. Plaintiff was ill throughout her detention. Id.

Even though Plaintiff was 55 years old at the time she was incarcerated, Plaintiff was assigned a top bunk, which she could only access by climbing onto the toilet, then onto the sink, and then hoisting herself up to the bunk; there was no ladder. Id. at ¶ 25. In order to get down, Plaintiff again had to climb on the sink and toilet in order to reach the floor. Id. On one occasion, Plaintiff was attempting to climb down from her bunk when her foot slipped on the frame of the bed; she fell straight backward, hitting the center of her back on a steel table in the cell, and then fell on her cellmate who was sleeping on a mattress on the cell floor. Id. Plaintiff was seen once by a prison nurse for her injuries from the fall; she was given an ice pack and not seen again despite a huge bruise that developed on her back and the pain that ensued for the next week. Id.

6

During her incarceration, Plaintiff was "called out" of her cell block on several occasions to be "warned" by Warden Woodruff about her personal conversations. Id. at ¶ 26. Warden Woodruff implicitly instructed Plaintiff not to mention her husband's name while in the cell block or otherwise discuss anything about her husband. Id. Plaintiff was repeatedly told that she would be "causing problems" if she talked about her husband, and that was "not permitted." Id. Warden Woodruff told Plaintiff he had specific instructions from his supervisors to warn Plaintiff of her behavior and to monitor her speech and conversations. Id.

Nearly half of the female inmates at the Prison while Plaintiff was incarcerated were clients of Plaintiff's husband in his capacity as Chief Public Defender and most others were clients of his office. Id. at ¶ 27. Plaintiff was threatened by other inmates because many of the inmates thought Plaintiff was an informant; Plaintiff went to corrections officers to report these threats on numerous occasions, but to her knowledge only one inmate was reprimanded for making threats to Plaintiff. Id. Throughout her entire incarceration, Plaintiff was in constant fear for her personal safety. Id.

**III. Legal Analysis.**

The incidents underlying Plaintiff's 42 U.S.C. § 1983 claim against the Defendants all relate to her treatment while incarcerated as a pretrial detainee at the Prison. Specifically Plaintiff alleges that her constitutional rights were violated when she was: (1) subjected to an illegal strip search; (2) locked down in her cell repeatedly and for lengthy periods of time through no fault of her own; (3) housed in an overcrowded cell block; (4) transported to and attended a hearing on her Petition at the McKean County Courthouse; (5) not segregated from convicted inmates; (6) not protected from ongoing and repeated threats, intimidation, coercion and physical assaults by

7

other inmates even after complaining to prison staff; (7) denied adequate medical care and treatment with respect to a fall and an upper respiratory infection she suffered from while incarcerated; and (8) warned by Warden Woodruff not to talk about her husband while incarcerated at the Prison. Plaintiff's Amended Complaint, ¶¶ 10-28.

In their Motion to Dismiss, Defendants contend that Plaintiff's Amended Complaint should be dismissed in its entirety. In support thereof, they raise a multitude of arguments. We will address each argument raised as necessary.

### A. Dismissal of Section 1983 claim against Prison Board.

Defendants argue that Plaintiff's Section 1983 claim against the Prison Board should be dismissed because it is not a properly named defendant. Defendants' Supporting Brief, p. 20. There is a split of authority within the district courts in this Circuit as to whether or not a prison board is a separate corporate entity from a county such that it does not have the capacity to be sued as a "person" under Section 1983. See Goodine v. Lackawanna County Sheriff et al., 2010 WL 830956, *5 (M.D. Pa.) (citing cases and ultimately holding "[a] county prison board is a local government unit and a 'person' amenable to suit under § 1983."). Given Plaintiff's *pro se* status and the Court's lack of knowledge as to whether or not the Prison Board is a separate entity from the County, we will deny Defendants' Motion to Dismiss Plaintiff's Section 1983 claim against the Prison Board on the basis that it is not a properly named defendant. Said denial is without prejudice to the Defendants to raise this issue again in a dispositive motion at the conclusion of the discovery period in this case.

8

**B. Dismissal of Plaintiff's Section 1983 claim to the extent it is based upon a violation of Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment.**

Defendants also move to dismiss Plaintiff's Section 1983 claim to the extent it is premised upon a denial of equal protection. Defendants' Supporting Brief, p. 20.

Plaintiff refers to the Equal Protection Clause in her Amended Complaint. See Amended Complaint, ¶ 30. In her Response to Defendants' Motion to Dismiss, however, Plaintiff articulates her Section 1983 claim as being based upon the due process clause of the Fourteenth Amendment. See Plaintiff's Response, p. 3 ("Plaintiff's claims are premised on her status as a pre-trial detainee, being housed in the McKean County Prison for the entire period from November 2, 2007, up to and including December 12, 2007. Pre-trial detainees are subject to the protections of the due process of law under the Fourteenth Amendment to the United States Constitution ...."). In fact, Plaintiff never mentions the Equal Protection Clause in her Response to Defendants' Motion to Dismiss.

To the extent Plaintiff is alleging that her rights under the Equal Protection Clause of the Fourteenth Amendment were violated, we find that her Amended Complaint fails to state such a claim upon which relief can be granted. Defendants' Motion to Dismiss Plaintiff's Section 1983 claim to the extent it is based upon an equal protection violation is granted. Moreover, we find that it would be futile to allow Plaintiff to amend her Complaint with respect to this aspect of her Section 1983 claim. Therefore, the dismissal of Plaintiff's Section 1983 claim to the extent it is based upon an equal protection violation is with prejudice.

9

## C. Statute of Limitation arguments.

It is well settled that a Section 1983 action which arises in Pennsylvania is subject to a two year statute of limitations period under 42 Pa.C.S.A. § 5524. See Lake v. Arnold, 232 F.3d 360, 368 (3rd Cir. 2000); Kost v. Kozakiewicz, 1 F.3d 176, 189-90 (3d Cir. 1993). Defendants make three arguments as to why various parts of Plaintiff's Section 1983 claim against them must be dismissed. We will address two of the three arguments substantively.[2]

### 1. Whether events first raised by Plaintiff in her Amended Complaint relate back to her original Complaint.

Defendants argue that Plaintiff's Section 1983 claim is barred to the extent it is based upon the following allegations, which first appeared in Plaintiff's Amended Complaint, because Plaintiff's Amended Complaint was not filed within the applicable limitations period and the claims do not relate back to the original Complaint: (1) Plaintiff's claim of an illegal strip search; (2) her claim regarding having punitive lock-down of prison cells due to the conduct of other inmates; (3) her claim regarding the aggravation of her Restless Leg Syndrome as a result of the overcrowded conditions in the Prison; and (4) her claim regarding the manner in which she was transported from the Prison to the McKean County Courthouse for her Petition hearing and her treatment upon arrival. Defendants' Supporting Brief, p. 8. Specifically, Defendants argue that these claims do not satisfy the requirements of Fed.R.Civ.P. 15(c)(1)(B), which provides that:

_____

[2]The remaining argument is that to the extent Plaintiff is alleging a state law claim against them, her claims are barred under the Political Subdivision Tort Claims Act which has a six month limitations period for state law claims based on intentional or willful behavior. Defendants' Supporting Brief, p. 6. It is clear that from her Amended Complaint that Plaintiff's lawsuit against Defendants is brought solely pursuant to federal law and not state law. Therefore, it is unnecessary to substantively address this argument and we elect not to do so.

"[a]n amendment to a pleading relates back to the date of the original pleading when: . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading," and therefore, these claims do not relate back to the date of the original filing for statute of limitations purposes. Id.

Plaintiff responds that both the Complaint and the Amended Complaint are based upon allegations regarding the entire period of her incarceration. Plaintiff's Response, pp. 5-6. Therefore, Plaintiff argues, her claims all relate to her time in prison and should be considered a part of the original conduct, transaction or occurrence set forth in her original Complaint filed on December 11, 2009. Id.

"If the amendment relates back to the date of the filing of the original complaint, the amended complaint is treated, for statute of limitations purposes, as if it had been filed at that time." Garvin, 354 F.3d at 220. In determining whether an amended complaint related back to an original complaint, the court in Lease v. Fishel, 2010 WL 1390607 (M.D. Pa. March 31, 2010) examined whether the complaint and amended complaint had a "common core of operative facts" that would put the opposing party on fair notice of the new claim. Id. at *3. The Lease court found that an amendment to a pleading relates back to the date of the original pleading when the amended complaint "merely amplifies the factual circumstances surrounding the pertinent course of conduct." Id. at *4. See also USX v. U.S. Steel Mining Company, Inc., 395 F.3d 161, 167 (3d Cir.2004) (an amended complaint may relate back where it identifies "additional sources of damages that were caused by the same pattern of conduct identified in the original complaint"); Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 310 (3d Cir. 2004) ("amendments that restate the original claim with greater particularity or amplify the factual circumstances surrounding the

11

pertinent conduct, transaction or occurrence in the preceding pleading fall within Rule 15(c)").

For example, in Harden-Bay v. Hobson, 2009 WL 3064690 (W.D. Mich.), the court held that

amendments to a complaint filed by a prisoner-plaintiff did not relate back to the original

complaint where the plaintiff's claims in the original complaint related to misconduct that

occurred throughout the period of the plaintiff's confinement in administrative segregation in

prison and his amended complaint pertained to events before and after his time in administrative

segregation. Id. at *4. See also Martinez v. Warner, 2008 WL 2331957, *7 (E.D. Pa. 2008)

(finding amended complaint related back to original complaint where "[t]he detailed factual

allegations in the original Complaint regarding [plaintiff's] incarceration at Lancaster County

prison indicate that all aspects of her incarceration are the subject of the lawsuit," including new

factual allegation that pre-trial detainee was illegally strip searched upon arrival at prison).

We find that the above-enumerated events, first raised in Plaintiff's Amended Complaint,

all relate to Plaintiff's alleged mistreatment by Defendants during her 42-day detention as a

pretrial detainee at the Prison, which is the same conduct, transaction, or occurrence set out in her

original Complaint. Therefore, these events all relate back to the date of her original Complaint

for purposes of the applicable statute of limitations; Defendants' Motion to Dismiss Plaintiff's

Section 1983 claim to the extent it is based upon the allegations first raised in Plaintiff's

Amended Complaint not relating back to the allegations in her original Complaint is denied.

**2. Whether Plaintiff's Section 1983 claim, to the extent it is based upon
Plaintiff being strip searched and Plaintiff being transported to and attending a Petition
hearing at the McKean County Courthouse, is barred by the applicable limitations period.**

Defendants also argue that Plaintiff's Section 1983 claim against them must fail to the

extent it is premised upon: (1) Plaintiff being strip searched upon her arrival at the Prison and (2)

12

Plaintiff being improperly treated while being transported to and attending a hearing on her Petition at the McKean County Courthouse, because these events occurred more than two (2) years prior to Plaintiff filing her Complaint on December 11, 2007. Defendants' Supporting Brief, p. 8.

In response, Plaintiff argues that: (1) her Complaint and Amended Complaint assert that she was continuously incarcerated as a pretrial detainee from November 2, 2007 up to and including December 12, 2007; (2) her original Complaint was filed on December 11, 2009, which was within the applicable 2-year limitations period; (3) "Defendants' collective deliberate indifference to her situation was manifest throughout the entire period of her incarceration;" and (4) therefore, her Section 1983 claims are not untimely filed. Plaintiff's Response, pp. 5-6.

A court may dismiss a claim on a Rule 12(b)(6) motion if it is apparent by the pleading that it has not been filed within the applicable statute of limitations period. Oshiver v. Levin, 38 F.3d 1380, 1385 n. 1 (3d Cir. 1994) ("[w]hile the language of Fed.R.Civ.P. 8(c) indicates that a statute of limitations defense cannot be used in context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.").

### a. The strip search of Plaintiff.

With respect to Plaintiff being strip searched, Plaintiff alleges in her Amended Complaint that: "[d]uring the period that Plaintiff was held as a pre-trial detainee, she was subjected to an illegal strip-search not supported by reasonable suspicion or adequate cause." Amended Complaint, ¶ 10. Plaintiff further alleges that this strip search was performed by a Prison corrections officer, under the Supervision of the Warden, Prison Board, and McKean County,

13

and that it violated her rights under the Due Process and Equal Protection Clauses of the

Fourteenth Amendment to the United States Constitution because "Defendants or their agents

had absolutely no reasonable suspicion that Plaintiff, as pre-trial detainee, was either carrying

contraband or a weapon on her body at the time of the strip-search." Id. at ¶¶ 10 and 30.

Significantly, Plaintiff does not allege with specificity when during her imprisonment at the

Prison, which was from November 2, 2007 until December 12, 2007, the allegedly

unconstitutional strip search occurred.

Defendants contend that the strip search occurred on November 2, 2007, the date Plaintiff

arrived at the Prison, and therefore, since Plaintiff's original complaint was not filed until

December 11, 2009, more than two years had passed since the search occurred and this part of

Plaintiff's Section 1983 claim must be dismissed as barred by the applicable statute of

limitations. Defendants' Supporting Brief, p. 8. In support of their position that the strip search

occurred on November 2, 2007, Defendants attached to their Motion to Dismiss a letter from

Plaintiff to defense counsel dated February 16, 2010, wherein Plaintiff indicates that the strip

search occurred on the day she was incarcerated, i.e. November 2, 2007.

Upon review of the letter, it does not fall within the category of documentation a court

can look at in considering a motion to dismiss. See Buck v. Hampton Tp. School Dist., 452 F.3d

256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are

attached to or submitted with the complaint . . . and any 'matters incorporated by reference or

integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items

appearing in the record of the case'."); Lum v. Bank of America, 361 F.3d 217, 222 (3d Cir.

2004) (in deciding a Rule 12(b)(6) motion to dismiss, courts generally consider the allegations in

14

the complaint, matters of public record and documents that form the basis of a claim).

Accordingly, we will not consider the contents of the February 16, 2010 letter in determining

whether the limitations period had run on this part of Plaintiff's Section 1983 claim prior to her

bringing suit on December 12, 2007.

Viewing the allegations contained in Plaintiff's Amended Complaint and not considering

the contents of the February 16, 2010 letter, we find that it is not apparent from the allegations

contained in the Amended Complaint that it was not filed within the applicable limitations

period. Accordingly, Defendants' Motion to Dismiss this aspect of Plaintiff's Section 1983 claim

on the basis that it is barred by the applicable statute of limitations is denied. Said denial, of

course, is without prejudice; Defendants are free to raise this limitations argument in a

dispositive motion after the discovery period in this case has concluded.

### b. Plaintiff's treatment while being transported to and attending a hearing at the McKean County Courthouse regarding her Petition for Final Protection from Abuse Order.

With respect to Plaintiff's claim that her due process rights under the Fourteenth

Amendment to the United States Constitution were violated by the Defendants when she was

transported to and attending a hearing on her Petition for Final Protection from Abuse Order at

the McKean County Courthouse, Defendants contend that the hearing at issue occurred on

December 5, 2007, more than two years prior to Plaintiff's original Complaint being filed on

December 11, 2009, and therefore, this part of Plaintiff's Section 1983 claim is barred by the

applicable statute of limitations.  In support of their position that the final hearing occurred on

December 5, 2007, Defendant attached to their Motion to Dismiss a Court Order dated

November 19, 2007, scheduling a Final Protection From Abuse hearing in Plaintiff's case against

15

her husband for December 5, 2007, at 10:00 A.M. in Courtroom #2 of the McKean County Courthouse.

This court Order is a public record. Therefore, we can, and will, consider it in determining whether this part of Plaintiff's Section 1983 claim is barred by the applicable two year statute of limitations.

Upon review of the allegations contained in Plaintiff's Amended Complaint and the November 19, 2007 Order of Court detailed above, we find that it is apparent that Plaintiff's Section 1983 claim was not filed within the applicable limitations period to the extent it is based upon Plaintiff being transported to, and attending a hearing on said Petition at the McKean County Courthouse. Accordingly, Defendants' Motion to Dismiss this aspect of Plaintiff's Section 1983 claim on the basis that it is barred by the applicable statute of limitations is granted. Moreover because it would be futile to allow Plaintiff to amend her Complaint with respect to this part of her Section 1983 claim, said dismissal is with prejudice.[3]

**D. Whether Plaintiff has sufficiently pled a municipal liability claim under Section 1983.**

Defendants also argue that Plaintiff's Section 1983 claim must be dismissed because "Plaintiff has not established that any policy, practice, or custom of the McKean County Prison, McKean County Prison Board, or McKean County itself violated her civil rights. Therefore, any Monell claim raised by Plaintiff should be dismissed." Defendants' Supporting Brief, p. 18. See also Id. at p. 20 ("Plaintiff has failed to point out any specific training and/or policy that would have prevented an allegedly illegal strip search against her in the instant matter").

---

[3]Given this conclusion it is unnecessary to substantively address Defendants' remaining arguments with respect to this part of Plaintiff's Section 1983 claim and we elect not to do so.

16

Relevant to her municipal liability claim, Plaintiff alleges as follows:

> The Defendants named herein, jointly and severally, were operating under color of any statute, ordinance, regulation, custom or usage in the operation of the McKean County prison, and all knew, or had reason to know, of the conditions then-existing at the McKean County prison, including lack of appropriate policies and/or training of corrections officers so as to avoid an illegal strip search of a pre-trial detainee, the physical conditions of the Prison, overcrowding of the Women's cell block, lack of policies to segregate pre-trial detainees from convicted felons, and the general prison population, and lack of appropriate medical care afforded the inmates.

Amended Complaint, ¶ 32.

A municipality cannot be liable for the actions of its employees under Section 1983 based upon a respondeat superior theory of liability. Monell v. Dept. of Social Services of N.Y., 436 U.S. 658, 691, 98 S.Ct. 2018, 2035-36 (1978). In order to state a legally sufficient claim for municipal liability under Section 1983, a plaintiff must plead the existence of a municipal policy or custom and that said policy or custom caused the alleged constitutional violation. 42 U.S.C. §1983; Monell, 436 U.S. at 694, 98 S.Ct. at 2037-38. A plaintiff can establish municipal liability in one of two ways: (1) by showing that a policy existed "'when a decision maker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict',"or (2) "'by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent to virtually constitute law'." Hayes v. Erie Cty. Office of Children and Youth, 497 F.Supp.2d 684, 702 (W.D. Pa. 2007) (quoting Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990)). Additionally, to sustain a Section 1983 claim for municipal liability under a custom theory, the plaintiff must "establish a municipal custom coupled with causation - i.e. that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and

17

that this failure, at least in part, led to their injury." Beck v. City of Pittsburgh, 89 F. 3d 966, 972 (3d Cir. 1996).

Where, as here, the allegations include a claimed failure to train municipal employees, "liability under Section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir.), cert. den'd sub nom, 528 U.S. 1005, 120 S.Ct. 499 (1999) (citing City of Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197 (1989)). There must also be a causal nexus, in that the "'identified deficiency in [the] training program must be closely related to the ultimate' constitutional injury." Woloszyn v. County of Lawrence, 396 F.3d 314, 325 (3d Cir. 2005) (citations omitted).

Thus, to survive a motion to dismiss, Plaintiff must "allege that a 'policy or custom' of [Defendants] was the 'moving force' behind the [constitutional] violation." Grayson v. Mayview State Hosp., 293 F.3d 103, 107 (3d Cir. 2002) (citing Bd. Of County Commr's of Bryan County v. Brown, 520 U.S. 397, 404 (1997)). Contrary to the Defendants' argument, there is no requirement at the pleading stage that Plaintiff identify a specific policy in order to survive a motion to dismiss. See Carter v. City of Pittsburgh, 181 F.3d 339, 358 (3d Cir. 1999). To so require would be "unduly harsh" at this early, pre-discovery, juncture in the proceedings. Id.

Construing the allegations contained in Plaintiff's Amended Complaint liberally, as we must given Plaintiff's *pro se* status, we conclude that her allegations, although sparse, sufficiently state the existence of a municipal policy or custom of Defendants that caused Plaintiff's constitutional rights to be violated only as to the following portions of Plaintiff's Section 1983 claim against them: (1) the knowledge and failure of these Defendants to

18

implement policies and/or train their corrections officers so as to avoid an illegal strip search of a pretrial detainee; (2) the knowledge and failure of these Defendants to correct the overcrowding of the women's cell block at the Prison; (3) the knowledge and failure of these Defendants to implement policies that segregated pretrial detainees from convicted felons and the general prison population; and (4) the knowledge and failure of these Defendants to remedy the lack of appropriate medical care afforded the inmates at the Prison. Defendants' Motion to Dismiss these parts of Plaintiff's Section 1983 claim against them on the basis that she did not establish that any policy, practice, or custom of Defendants caused Plaintiff's constitutional rights to be violated is denied.

To the contrary, we find that the allegations contained in Plaintiff's Amended Complaint do not sufficiently state the existence of a municipal policy or custom on the part of Defendants that caused Plaintiff's constitutional rights to be violated to the extent Plaintiff's Section 1983 claim is premised upon: (1) the lock-down procedures at the Prison; (2) Plaintiff not being protected from threats, intimidation and physical assault by other inmates after complaining to prison staff (other than as said allegations relate to Plaintiff's claim with respect to her being housed as a pretrial detainee with convicted inmates); and (3) Plaintiff being warned by Warden Woodruff not to talk about her husband while incarcerated at the Prison. Therefore, Defendants' Motion to Dismiss Plaintiff's Section 1983 municipal liability claims against Defendants on the basis that Plaintiff has not established that any policy, practice, or custom of Defendants caused Plaintiff's constitutional rights to be violated is granted to the extent Plaintiff's Section 1983 claim is based upon: (1) the lock-down procedures at the Prison; (2) Plaintiff not being protected from threats, intimidation and physical assault by other inmates after complaining to prison staff

19

(other than as said allegations relate to Plaintiff's claim with respect to pretrial detainees being housed with convicted inmates); and (3) Plaintiff being warned by Warden Woodruff not to talk about her husband while incarcerated at the Prison. Said dismissal, however, is without prejudice to Plaintiff to file a Second Amended Complaint no later than October 8, 2010 that cures the current deficiencies in this part of her Section 1983 claim against Defendants.

**E. Whether Plaintiff's factual allegations with respect to the strip search, overcrowded cells, failure to segregate pre-trial detainees from convicted felons and the general prison population, and lack of adequate medical care state violations of Plaintiff's rights under the Constitution?**

Based upon the above conclusion that Plaintiff has only sufficiently alleged that a policy or custom of Defendants violated her constitutional rights with respect to her allegations related to her being strip searched, subjected to overcrowded cells, not being segregated from convicted felons and the general prison population, and not being provided appropriate medical care, forthwith the remainder of our review of Defendants' Motion to Dismiss Plaintiff's Amended Complaint based upon Plaintiff's failure to allege a Section 1983 claim upon which relief can be granted will be limited to review of these allegations in Plaintiff's Amended Complaint.

**1. Whether Plaintiff's Section 1983 claim based upon the allegedly illegal strip search states a violation of Plaintiff's constitutional rights?**

Defendants contend that Plaintiff's Section 1983 claim must be dismissed to the extent it is based upon Plaintiff being subjected to an illegal strip search because this alleged conduct does not violate Plaintiff's rights under the Constitution. Defendants' Supporting Brief, pp. 10-11.

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulations, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress ... .

Id. "In any § 1983 action the initial inquiry must focus on whether the two essential elements to

a § 1983 action are present: (1) whether the conduct complained of was committed by a person

acting under color of state law; and (2) whether this conduct deprived a person of rights,

privileges, or immunities secured by the Constitution or laws of the United States." Parratt v.

Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled on other grounds

by Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Section 1983 "is

not itself a source of substantive rights, but a method for vindicating federal rights elsewhere

conferred." Baker v. McCollan, 443 U.S. 137, 145 n. 3, 99 S.Ct. 2689 (1979).

Here unquestionably the conduct complained of was committed by persons acting under

color of state law. See Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473 (1961), overruled on

other grounds by Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611

(1978). Our focus is on the second essential element-whether the alleged strip search of Plaintiff

while incarcerated as a pretrial detainee at the McKean County Prison violated Plaintiff's rights

under the United States Constitution.

Less than one week ago, the United States Court of Appeals for the Third Circuit issued a

precedential opinion on the issue of "whether it is constitutional for jails to strip search arrestees

upon their admission to the general population." Florence v. Board of Chosen Freeholders of the

County of Burlington et al.,, ___ F.3d ___, 2010 WL 3633178, *1 (September 21, 2010). In

Florence, the lead plaintiff had been arrested based on a bench warrant that charged him with an

non-indictable variety of civil contempt. Id. The two facilities where he was incarcerated before

the charges against him were dismissed both performed blanket strip searches of non-indictable

21

offenders regardless of whether there was reasonable suspicion that the offender possessed drugs, weapons, or other contraband. Id. at *2, n 2. Ultimately, the Florence court held that "balancing the Jails' security interests at the time of intake before arrestees enter the general population against the privacy interests of the inmates," the scope, manner, and place of the blanket strip searches performed at the two facilities were reasonable and did not violate the Fourth Amendment. Id. at *13. Significant for purposes of the instant case, the appellate court considered, but was not concerned, that individualized suspicion that an offender was smuggling contraband was not required prior to being subjected to the strip searches at issue. Id. at *10.

Turning to the relevant allegations contained in Plaintiff's Amended Complaint, paragraph 10 states: "[d]uring the period that Plaintiff was held as a pre-trial detainee, she was subjected to an illegal strip-search not supported by reasonable suspicion or adequate cause." Amended Complaint, ¶ 10. Paragraph 30 states:

> Plaintiff asserts that the strip-search performed by a corrections officer of the McKean County prison under the supervision of the Prison Warden, Prison Board and the County of McKean, constituted a denial of her rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. Plaintiff further asserts that the Defendants or their agents had absolutely no reasonable suspicion that Plaintiff, as a pre-trial detainee was either carrying contraband or a weapon on her body as the time of the strip-search. Plaintiff was subjected to extreme humiliation, embarrassment, distress, and emotional and mental trauma as a result of the illegal and improper strip-search.

Id. at ¶ 30.

Reviewing Plaintiff's allegations in light of the Florence decision we find that the facts alleged in Plaintiff's Amended Complaint are insufficient to show that the strip search procedure to which Plaintiff allegedly was subjected was unreasonable such that her rights under the Constitution were violated. Plaintiff's sole basis for the strip search being unconstitutional is that

22

at the time she was subjected to the strip search the Defendants lacked reasonable suspicion that she, a pre-trial detainee, was attempting to bring contraband into the prison; the Florence decision makes it clear that lack of individualized reasonable suspicion is not a relevant part of the inquiry into whether a correctional facility's strip search procedures are constitutional.

Defendants' Motion to Dismiss this part of Plaintiff's Section 1983 claim against them for failure to state a claim is granted. Said dismissal, however, is without prejudice to Plaintiff to file a Second Amended Complaint no later than October 8, 2010 that cures the current deficiencies in this part of her Section 1983 claim against Defendants.

### 2. Whether Plaintiff's Section 1983 claim based upon inadequate medical care states a violation of Plaintiff's constitutional rights?

Defendants also contend that Plaintiff's Section 1983 claim must be dismissed to the extent said claim is premised upon Defendants not providing adequate medical care to Plaintiff during the time she was incarcerated at the Prison:

> Plaintiff . . . fails to set forth a viable claim of Eighth Amendment deliberate indifference regarding her medical needs and treatment. She makes no showing of a serious medical need or a failure to treat that can be expected to lead to "substantial and unnecessary suffering, injury or death". She also fails to set forth a Fourteenth Amendment violation as well.

Defendants' Supporting Brief, pp. 16-17.

Given that Plaintiff was a pretrial detainee during the entire time of her incarceration, her Section 1983 lack of adequate medical care claim must be examined under the Fourteenth Amendment and not the Eighth Amendment. The Fourteenth Amendment affords pretrial detainees such as Plaintiff protections that are "at least as great as the Eighth Amendment protections afforded to a convicted prisoner." Natale v. Camden County Corr. Facility, 318 F.3d 575, 581 (3d Cir.2003) (quoting City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244,

103 S.Ct. 2979 (1983)). Therefore, when assessing medical claims by pretrial detainees, courts are to apply the deliberate indifference standard established under the Eighth Amendment but must view the inquiry in the context of the Bell v. Wolfish standard, which applies Fourteenth Amendment due process principles as opposed to the cruel and unusual punishment standard to pretrial detainees. See Hubbard v. Taylor, 399 F.3d 150, 165-66 (3d Cir.2005). The deliberate indifference standard established under the Eighth Amendment requires a finding of a serious medical need and acts or omissions by prison officials that indicate deliberate indifference to that need. Estelle v. Gamble, 429 U.S. at 104; Natale, 318 F.3d at 582. The standard set forth in Bell v. Wolfish, 441 U.S. 520, 99 S.Ct.(1979) is whether the conditions of confinement (or here, inadequate medical treatment) amounted to punishment prior to an adjudication of guilt." Montgomery v. Ray, 2005 WL 1995084 at *1 (3d Cir. August 19, 2005).

The Third Circuit court has held that "[a] serious medical need is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention'." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.1987)) (citation omitted). A medical need is also serious where the denial of treatment would result in the "unnecessary and wanton infliction of pain," or a "life-long handicap or permanent loss." Id. at 273 (internal citations omitted).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." Estelle v. Gamble, 429 U.S. at

24

104-05. To the contrary, "a prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. Harrison v. Barkley, 219 F.3d 132, 138-140 (2d Cir.2000). Mere disagreement as to the proper medical treatment is insufficient to state a constitutional violation. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir.2004) (citations omitted).

Plaintiff alleges that during her incarceration, a female corrections officer with an acute respiratory infection came into work despite her illness and infected nearly the entire population of prisoners, including the Plaintiff, who became extremely ill. Amended Complaint, ¶ 24. There were no windows or fresh air in the cell block and Plaintiff was repeatedly denied her requests to see a doctor. Id. Plaintiff was ill throughout her detention. Id.

Plaintiff also alleges that as she was attempting to climb down from her upper bunk, her foot slipped on the frame of the bed, she fell straight backward hitting the center of her back on a steel table in the cell, and then fell on her cellmate who was sleeping on a mattress on the cell floor. Id. at ¶ 25. Plaintiff alleges she was seen once by a prison nurse for her injuries from the fall, was given an ice pack, and then not seen again despite a huge bruise that developed on her back and pain that ensued for the next week. Id.

Reviewing these allegations, we find that the medical treatment received by Plaintiff while incarcerated at the Prison did not amount to punishment prior to an adjudication of guilt in violation of the Fourteenth Amendment because: (1) Plaintiff's allegations do not sufficiently allege a serious medical need and (2) with respect to Plaintiff's alleged back injury, given Plaintiff's allegations that she was seen by a prison nurse for her injuries from the fall, who gave her an ice pack, and then was not seen again, Plaintiff has not sufficiently pled deliberate

indifference to a serious medical need; the treatment of Plaintiff's back injury by the prison nurse was reasonable. Defendant's Motion to Dismiss Plaintiff's Section 1983 claim to the extent it is premised upon Plaintiff receiving inadequate medical treatment is granted and said claim is dismissed. Said dismissal, however, is without prejudice to Plaintiff to file a Second Amended Complaint no later than October 8, 2010 that corrects the deficiencies in this part of her Section 1983 claim.

### 3. Whether Plaintiff's Section 1983 claim based upon the alleged overcrowding of the women's cell block at the Prison and/or the failure to segregate Plaintiff, a pretrial detainee, from convicted felons and the general prison population states a violation of her rights under the Constitution?

Defendants do not specifically argue that Plaintiff's Section 1983 claim, to the extent it is premised on overcrowding and on the failure to segregate Plaintiff, as a pretrial detainee, from convicted felons and the general prison population, must be dismissed because this alleged conduct does not violate Plaintiff's rights under the Constitution. Instead they argue summarily: "[w]ith respect to the Plaintiff's assertion that the conditions of her confinement at the McKean County Prison amounted to cruel and unusual punishment, the Eighth Amendment prohibition against cruel and unusual punishment guarantees that prison officials must provide humane conditions of confinement. Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care and must take reasonable steps to guarantee the safety of inmates." Defendants' Supporting Brief, p. 13. They then conclude:

Plaintiff fails to allege any facts to demonstrate that the conditions of her confinement at the McKean County prison deprived her of any basic human needs such as food, clothing, shelter, or personal safety. Plaintiff's allegations do not demonstrate that she suffered inhumane treatment or was exposed to a substantial risk of serious harm during her brief confinement at the McKean County Prison. Further, plaintiff does not allege that she was deprived of the minimal civilized measure of life's necessities.

26

Id. at p. 16.

The appellate court for the Third Circuit explained in <u>Hubbard v. Taylor</u>, 538 F.3d 229

(3d Cir. 2008) ("<u>Hubbard II</u>") that where, as here, a plaintiff challenges her conditions of

confinement:

> we must consider whether there has been a violation of the Due Process Clause of
> the Fourteenth Amendment. As the Supreme Court stated in *Bell v. Wolfish*:
>
>> In evaluating the constitutionality of conditions or restrictions of
>> pretrial detention that implicate only the protection against
>> deprivation of liberty without due process of law, we think that the
>> proper inquiry is whether those conditions amount to punishment
>> of the detainee. For under the Due Process Clause, a detainee may
>> not be punished prior to an adjudication of guilt in accordance with
>> due process of law.
>> 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

The <u>Hubbard II</u> court further explained that:

> we must determine whether the conditions imposed upon Plaintiffs at [the prison]
> amount to punishment. In making this determination:
>
>> A court must decide whether the disability is imposed for the
>> purpose of punishment or whether it is but an incident of some
>> other legitimate governmental purpose. Absent a showing of an
>> expressed intent to punish on the part of the detention facility
>> officials, that determination generally will turn on 'whether [the
>> disability has] an alternative purpose ... and whether it appears
>> excessive in relation to [that] purpose.' ... Thus, if a particular
>> condition or restriction of pretrial detention is reasonably related to
>> a legitimate governmental objective, it does not, without more,
>> amount to 'punishment.' Conversely, if a restriction or condition is
>> not reasonably related to a legitimate goal-if it is arbitrary or
>> purposeless-a court permissibly may infer that the purpose of the
>> governmental action is punishment that may not constitutionally be
>> inflicted upon detainees qua detainees.

> *Id.* at 538-39, 99 S.Ct. 1861 (citations omitted). The Supreme Court further stated
> that:

In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.

*Id.* at 540 n. 23, 99 S.Ct. 1861 (citations omitted). *See also Block v. Rutherford*, 468 U.S. 576, 584, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984) (emphasizing the "very limited role that courts should play in the administration of detention facilities").

In *Union County Jail Inmates v. Di Buono*, 713 F.2d 984 (3d Cir.1983), this Court distilled the Supreme Court's teachings in *Bell* into a two-part test. "[W]e must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes." *Id.* at 992.

Hubbard II, 538 F.3d at 231-32.

### a. Overcrowding issue.

In her Amended Complaint, Plaintiff alleges that throughout her incarceration at the

Prison, which was for a total of forty-two (42) days, she was housed in a cell block designed to

accommodate a maximum of seven inmates, but which actually housed a minimum of twelve

inmates and a maximum of twenty-one inmates during her time at the prison. Amended

Complaint, ¶ 19. Plaintiff further alleges that every time she was locked down for punishment or

for the night, her cell contained three inmates, with one sleeping on the cell floor. Id. at ¶ 14.

Plaintiff also alleges that she suffered from Restless Leg Syndrome ("RLS") during the time of

her incarceration and that she was unable to relieve the excruciating pain she suffered throughout

her imprisonment as a result of the RLS because due to her cell being overcrowded, she could

not walk off her pain, which the only way she could relieve the pain. Id. at ¶¶ 12-14.

Upon review of Plaintiff's allegations surrounding the overcrowding of her prison cell and cell block during the time of her confinement, we find that these allegations do not state a claim upon which relief can be granted. Specifically, there are no factual allegations in Plaintiff's Amended Complaint that even suggest that Defendants housed Plaintiff in an overcrowded cell//cell block for the purpose of punishing her, in violation of the Fourteenth Amendment, as opposed to simply trying to manage an overcrowded prison. Accordingly, Defendants' Motion to Dismiss this aspect of Plaintiff's Section 1983 claim against them is granted; said dismissal, however, is without prejudice to Plaintiff to file a Second Amended Complaint no later than October 8, 2010 that corrects the deficiencies in this part of her Section 1983 claim.

**b. Failure to Segregate Plaintiff, a pretrial detainee, from convicted inmates.**

Plaintiff alleges that as a pretrial detainee she was not segregated from convicted inmates, many of whom were drug dealers or who were serving time for drug related offenses and that this failure to segregate violated her rights under the Constitution. Id. at ¶ 20.

While the Third Circuit court has never addressed the issue of whether the failure to segregate a pretrial detainee from convicted felons violates a person's rights under the Constitution, district courts both within and outside this Circuit have concluded that generally a pretrial detainee does not have a constitutional right under the Fourteenth Amendment to be housed separately from convicted inmates in the general population. See, for example, Elder v. Williamson, 2008 WL 4822034, *4 (C.D. Ill.) (practice of housing pretrial detainees with convicted inmates does not, by itself, violate a pretrial detainee's constitutional rights); Burciaga

29

v. County of Lenawee, 123 F.Supp.2d 1076, 1079-80 (E.D. Mich. 2000) (holding that "unless the state acts with the impermissible intent to punish a pre-trial detainee or is deliberately indifferent to a pre-trial detainee's safety, it does not violate the due process clause to house that pre-trial detainee with a sentenced inmate"); Porter v. Bodlovich, 1996 WL 535436, *8 (N.D. Ind.) (citing Lock v. Jenkins, 641 F.2d 488 (7th Cir. 1981) (pretrial detainee "has no constitutional or federal right as a pre-trial detainee to be housed separately from convicted inmates in the general population); Hoover v. Watson, 886 F.Supp. 410, 417 (D.Del. 1995) (court could not find any authority "to support the assertion that pre-trial detainees who are being lawfully held pending a trial have a liberty interest in being housed separately from sentenced inmates.").

Following the rationale of Bell v. Wolfish, *supra.*, we find that a pretrial detainee does not have a constitutional right under the Fourteenth Amendment to be housed separately from convicted inmates absent evidence that such housing of the pretrial detainee is for the purpose of punishment. Here, there are no factual allegations in Plaintiff's Amended Complaint that suggest that Defendants housed Plaintiff with/failed to segregate Plaintiff from convicted inmates at the Prison for the purpose of punishing her, in violation of the Fourteenth Amendment, as opposed to providing adequate housing facilities for all inmates. Accordingly, Defendants' Motion to Dismiss this aspect of Plaintiff's Section 1983 claim against them is granted. Defendants' Motion to Dismiss this part of Plaintiff's Section 1983 claim, however, is without prejudice to Plaintiff to file a Second Amended Complaint no later than October 8, 2010 that corrects the deficiencies in this part of her Section 1983 claim.

**F. Plaintiff's Section 1983 claim against Warden Woodruff in his individual capacity.**

Defendants make two arguments as to why Plaintiff's Section 1983 claim should be dismissed as to Warden Woodruff in his individual capacity.[4] We address first Defendants' argument that Plaintiff's Section 1983 claim against Warden Woodruff in his individual capacity should be dismissed for failure to allege his personal involvement other than to the extent it is based upon Plaintiff's allegation that Warden Woodruff told her to refrain from discussing her personal relationship with her husband, the then Chief Public Defender of McKean County, with other inmates because these discussions were causing problem in the prison. Defendants' Supporting Brief, p. 6.

Liability under Section 1983 is personal in nature. A defendant who supervised the wrongdoer but did not personally participate in the wrongful act is not liable under Section 1983 on a theory of respondeat superior unless he personally directed or had actual knowledge of, and acquiesced in, the deprivation. Polk County v. Dodson, 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (citing Monell, 436 U.S. at 694). See also Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir.2005) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (explaining "[an individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of

---

[4]Defendants also argue that Defendant Woodruff is entitled to immunity pursuant to the Political Subdivision Tort Claims Act, 42 Pa.C.S.A.§§ 8541-8564 to the extent Plaintiff is bringing suit pursuant to state law. Again, because it is clear that Plaintiff's Amended Complaint is based upon federal law and not state law, it is unnecessary to substantively address this part of Defendants' Motion to Dismiss and we elect not to do so.

actual knowledge and acquiescence.").

Reviewing the allegations contained in Plaintiff's Amended Complaint, we find that other than Plaintiff's allegations with respect to Warden Woodruff warning her about her personal conversations, Plaintiff's Amended Complaint does not allege facts that, if proven, would show that Warden Woodruff personally directed or had actual knowledge of, and acquiesced in, any of the conduct which Plaintiff contends deprived her of her constitutional rights. Therefore, Defendants' Motion to Dismiss Plaintiff's Section 1983 claim against Defendant Woodruff in his individual capacity is granted with respect to all aspects of Plaintiff's Amended Complaint other than with respect to Plaintiff's allegations that Warden Woodruff warned Plaintiff about her personal conversations, which remains a viable part of Plaintiff's Section 1983 claim. Said dismissal, however, is without prejudice to Plaintiff to file a Second Amended Complaint no later than October 8, 2010 that corrects the deficiencies in this part of her Section 1983

Defendants' second argument is that Warden Woodruff is entitled to qualified immunity with respect to his conduct towards Plaintiff. Defendants' Supporting Brief, pp. 21-25. In determining whether an individual defendant is protected by qualified immunity, we generally conduct a two-step inquiry: (1) whether the plaintiff has alleged a constitutional violation; and (2) whether that right was clearly established prior to the violation. Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir.2007) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 129 S.Ct. 808 (2009)). The difficulty with conducting this inquiry in the case at hand is that Defendants have not provided this Court with any substantive analysis in support of their qualified immunity argument. Absent such analysis, this Court will not conclude either that Plaintiff has not alleged a violation of her constitutional rights as a result of Warden

Woodruff's conduct towards her or that Plaintiff's constitutional right(s) was not clearly established prior to the alleged violation.

Defendants' motion to dismiss Plaintiff's Section 1983 claim against Warden Woodruff in his individual capacity on the basis of qualified immunity is denied without prejudice to Defendants raising this issue in a dispositive motion after the conclusion of the discovery period.

## G. Plaintiff's request for Punitive Damages in the amount of $30,000,000.

Finally, Defendants also move to dismiss Plaintiff's request for punitive damages, arguing: (1) that punitive damages cannot be awarded in Section 1983 actions against municipalities or an officer sued in his official capacity and (2) Plaintiff has failed to allege facts that support a finding that Warden Woodruff as an individual "acted in an outrageous or evil manner which would justify an award of punitive damages." Defendants' Supporting Brief, pp. 28-29.

Defendants are correct that punitive damages cannot be recovered against the County, the Prison Board and Warden Woodruff in his official capacity. In Hayes v. Erie County Office of Children and Youth, 497 F.Supp.2d 684 (W.D. Pa. 2007) (McLaughlin, J.), the court explained:

Punitive damages are not recoverable against municipalities under § 1983, City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), and this limitation has been extended as well to counties. See Doe v. County of Centre, PA, 242 F.3d 437, 455 (3d Cir.2001) (recognizing that City of Newport "stands for the proposition that municipalities, and more broadly, state and local government entities, are immune from punitive damages" under § 1983). [And] a claim against a county employee in his or her official capacity is the functional equivalent of a claim against the county itself, see, e.g., Duffy v. County of Bucks, 7 F.Supp.2d 569, 581 (E.D. Pa.1998) (official capacity suits against county correctional officers must be analyzed as suits against the County itself).

Id. at 703. Defendants' Motion to Dismiss Plaintiff's demand for punitive damages against Defendants County, County Prison Board and Warden Woodruff in his official capacity is granted.

With respect to Plaintiff's claim of entitlement to punitive damages from Warden Woodruff in his individual capacity, in Smith v. Wade, 461 U.S. 30 (1983), the United States Supreme Court held that in order for a jury to impose punitive damages against individual defendants in a Section 1983 case, the alleged conduct must demonstrate reckless or callous disregard of, or indifference to, the rights or safety of others. Smith, 461 U.S. at 56. Punitive damages may also be awarded if the individual defendant's conduct is shown to be a result of evil motive or intent, but need not necessarily meet this higher standard. Id. at 46-47.

To review, Plaintiff's allegations with respect to Warden Woodruff are that during her incarceration, Plaintiff was "called out" of her cell block on several occasions to be "warned" by Warden Woodruff about her personal conversations, that Warden Woodruff implicitly instructed Plaintiff not to mention her husband's name while in the cell block or otherwise discuss anything about her husband, that Plaintiff was repeatedly told she would be "causing problems" if she talked about her husband, and that was "not permitted," and Warden Woodruff told Plaintiff he had specific instructions from his supervisors to warn Plaintiff of her behavior and to monitor her speech and conversations. Amended Complaint, ¶ 26. Even assuming that these allegations are true, such conduct does not equate to reckless or callous disregard of, or indifference to, Plaintiff's rights by Warden Woodruff or that Warden Woodruff's conduct was the result of evil motive or intent. Accordingly, Defendant's Motion to Dismiss Plaintiff's demand for punitive damages as to Warden Woodruff as an individual is granted.

34

## IV. Conclusion.

Defendants' Motion to Dismiss is granted in part and denied in part. An appropriate

Order follows.

September 23, 2010

Maurice B. Cohill, Jr.
Senior District Court Judge